UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ting Ji,<br>                    Plaintiff,<br><br>        v.<br><br>Bose Corporation and White Packert, Inc.,<br>                    Defendants.<br><br>Bose Corporation,<br>                    Third-Party Plaintiff,<br><br>        v.<br><br>White Packert, Inc.,<br><br>                    Third-Party Defendant. | Civil Action No. 1:06-cv-10946 NMG |

---

**DEFENDANT BOSE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO PRECLUDE EXPERT EVIDENCE**

---

Defendant Bose Corporation ("Bose") hereby moves to preclude Plaintiff Ting Ji from offering expert evidence from Richard Wolfe, Esq. at a trial, at a hearing, or on a motion.

## I.      INTRODUCTION & FACTUAL BACKGROUND

This case centers around the Defendants' rights in certain images of the Plaintiff taken during a 2004 photo shoot.  Bose asserts that a release (the "Release") signed by Plaintiff at the photo shoot defines the scope of rights granted to the photographer, Defendant White Packert, Inc. ("White Packert"), and to others acting with White Packert's authority (i.e. Bose).  (*See* White Packert Adult Release, Ex. A to Babbin Expert Report, Dkt. 68-2.)  Plaintiff asserts that a payment voucher (the "Voucher") containing incomplete language and lacking essential terms dictates the scope of rights.  (*See* Models Group Voucher Form, Ex. B to Babbin Expert Report, Dkt. 68-2; *see generally* Plaintiff's First Amended Complaint, Dkt. 48.)  The Court's inquiry into

the validity and scope of the Release and Voucher documents is thus the primary legal issue in this case.

On December 14, 2007, Plaintiff served Bose and White Packert with the expert report of Richard Wolfe, Esq., (the "Wolfe Report"). In his report, Mr. Wolfe identifies himself as a Miami attorney with extensive experience in entertainment law. (Forman Decl., Ex. 1, Wolfe Report.) Perhaps unsurprisingly, the Wolfe Report is almost entirely comprised of legal opinions regarding the validity and scope of the Release and Voucher documents. (*See generally id.*) By offering legal opinion in the guise of an expert report, the Plaintiff is attempting to usurp the Court's role as arbiter of questions of law. Thus, the Wolfe Report should be excluded in its entirety.

## II.   ARGUMENT

### A.  Legal Standard

Rule 702 of the Federal Rules of Evidence allows expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" The rule does not allow expert testimony on legal issues, or expert testimony which contains legal arguments or conclusions. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) (joining seven circuit courts in prohibiting expert testimony on legal issues under the Federal Rules of Evidence); *In re Initial Pub. Oferring Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (stating that "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.")

As the First Circuit explained, "[i]t is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" *Nieves-Villanueva*, 133 F.3d at 99 (*quoting United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)). The line is bright

because it is the judge who has expert knowledge of the law, thus making any expert testimony on legal issues "at best cumulative, and at worst prejudicial."  *Id.* at 100.

Courts therefore routinely exclude expert testimony on legal issues.  *See, e.g., Carrier v. Am. Bankers Life Assurance Co. of Florida*, 2007 WL 3124653 (D.N.H. Oct. 25, 2007) (excluding expert testimony on legal issues); *Murray v. Ohio Cas. Corp.*, 2005 WL 2373857, at *3 (S.D. Ohio Sept. 27, 2005) (finding that an expert report must be "excluded because it offers a legal conclusion."); *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 97-99 (D.D.C. 2002) (striking an expert report that contained "impermissible legal conclusions that intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law."); *In re Initial Pub. Oferring Sec. Litig.*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) (precluding expert testimony on issues of law reserved for the court).

In addition, an expert may only offer opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Opinions that are asserted but otherwise unproved are not admissible.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997); *Polaino v. Bayer Corp.*, 122 F. Supp. 2d 63, 67-69 (D. Mass. 2000) (excluding expert testimony that was based on speculation instead of facts).

### B.  The Wolfe Report is Replete With Testimony On Legal Issues and Should be Excluded

The Wolfe Report is filled with legal argument and legal conclusions.  Section IV of the Wolfe Report entitled "Opinions and the Bases Therefore" begins:

> It is my opinion that the limiting language of the Voucher renders any subsequent release ineffective and inoperable.  The Voucher, the first release signed at the outset of the day, controls the use of [Plaintiff]'s images.

(Forman Decl., Ex. 1 at 5.)

Mr. Wolfe proceeds to offer "expert" testimony consisting of nothing more than his interpretation of the validity and scope of the Voucher and Release documents, including citations to case law.  As described in more detail below, there is no question that these opinions encompass purely legal issues.  *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 48 (1st Cir. 2004) ("Contract interpretation questions, under Massachusetts law, are ordinarily questions of law for a court[.]")  All of Mr. Wolfe's opinions contained in Section IV of the Expert Report should be excluded in their entirety as improper testimony on issues of law.  *Nieves-Villanueva*, 133 F.3d at 99-100.

### 1.  Mr. Wolfe Improperly Opines on The Validity of the Release

In Section (IV)(A)(1) of the Wolfe Report entitled "Scope of the Grant," Mr. Wolfe offers a variety of legal opinions such as: "[u]nder common law and many case precedents, rights not conveyed are retained" and "[t]his release was intended to be as broad as possible…" (Forman Decl., Ex. 1 at 5.)  He also opines on the legal sufficiency of the consideration provided to Plaintiff in exchange for her grant of rights in the Release: "[h]ere there is no statement of consideration in the Adult Release."  (*Id.*)  He further states that "[n]umerous cases have consistently held that similar releases are not binding absent consideration" and goes on to cite case law that allegedly supports his legal conclusion that the Release is not valid.  (*Id.* at 6.)

### 2.  Mr. Wolfe Improperly Opines on the Validity of the Voucher

In the next section, Section IV(A)(2) entitled "Release Language," Mr. Wolfe offers legal opinions about the validity of the Voucher document.  He testifies as to the drafter's alleged

intent, so as to draw legal conclusions about the meaning of terms in the Voucher.  (*Id.* at 6-7.)
For example, he states: "[t]he release or grant of rights has been incorporated into the Voucher in
order to give the model, the modeling agency, and the photographer one document which sets
forth the entire scope of the models [*sic*] engagement and the scope of the grant of rights." (*Id.*)
He also asserts: "[t]he clear language of the Voucher was intended to override any other grant of
rights, such as that contained in the Adult Release.  This is confirmed by the last sentence of the
Voucher…"  (*Id.* at 7.)

     Mr. Wolfe goes on to opine on the usage and payment terms appearing in the Voucher
document: "[n]ot only is the limited use of the photograph[s] defined in the Voucher, but the
right to payment is also set forth."  (*Id.*)  He ultimately concludes that the Voucher has legal
effect: "[s]ince the photographer has signed as the client in the Voucher, the Voucher has legal
precedent over the Release."  (*Id.*)

        3.  <u>Mr. Wolfe Improperly Testifies about the Alleged Scope and Term of the
             Voucher</u>

     In the next two sections, Mr. Wolfe offers testimony on the alleged scope of the Voucher.
All of his testimony is improper legal argument and legal conclusion.  For example, in Section
IV(A)(3) entitled "Compensation and Intended Use of the Photographs," Mr. Wolfe purports to
interpret terms in the Release and Voucher and draw conclusions about their meaning:

> It is clear to me that neither the model nor the modeling agency were told about
> the intended use of the photographs based upon the email sent to the model prior
> to the shoot.  The explanation of the photo shoot and Bose's rights regarding use
> of the photos, which was provided to [Plaintiff] by The Models Group, hired by
> White Packert, made it clear that the use was limited in nature and, even though
> described in the email as a buyout this language was used solely to prevent White
> Packert from using the photos as stock material. The Voucher clearly states the
> photographs "may not be used for packages, point of purchase displays,
> billboards, posters, hang tags, exclusivity endorsements, or television."  This
> language is confirmed by additional statements in the Voucher that states these

photographs may only be used by the accounts or the product and in the manner "specified above."

(*Id*. at 9.)

At one point in the report, Mr. Wolfe explicitly acknowledges that his opinions comprise legal testimony on the issue of contract interpretation.  Section IV(B) entitled Unspecified Term, begins: "***Next, I have been asked to opine if the lack of a defined term in the Voucher*** and which states that the grant of rights will continue 'for a period terminating months from the date hereof' ***effects its validity***."  (*Id*. at 9-10) (emphasis added).  Mr. Wolfe goes on to opine that the lack of a "sunset" clause in the Voucher "is neither untypical nor does it have an effect to render the model release to be void" and cites a Ninth Circuit case that allegedly supports his legal conclusion.  (*Id.* at 10.)

4.   The Recitation of Background Facts in the Wolfe Report Even Includes Improper Legal Conclusions Which Should Be Excluded

The Wolfe Report even attempts to present legal conclusions as background facts.  In Section III of the Wolfe Report, Mr. Wolfe presents a number of "Background Facts," which essentially mirror the allegations found in Plaintiff's Complaint.  (*Compare* Forman Decl., Ex. 1 at 3-5 *with* Plaintiff's First Amended Complaint, Dkt. 48 at ¶¶ 1-19.)  Many of these "Background Facts" comprise legal conclusions and therefore should be excluded.  *Nieves-Villanueva*, 133 F.3d at 99-100.

| Statement From the Wolfe Report | Improper Legal Conclusion(s) |
|---|---|
| "Bose bought the pictures from White Packert and, in direct violation of the terms of the Release, proceeded to display Ting's image as part of a widespread international campaign to promote Bose's 321 System, thereby exploiting Ting's publicity and celebrity with the goal of marketing the 321 System." (Forman Decl., Ex. 1 at 4.) | This statement contains legal conclusions regarding the validity of the Voucher, the scope of the Voucher, and the legal affect of Bose's actions. |

| Statement From the Wolfe Report | Improper Legal Conclusion(s) |
|---|---|
| "Neither Bose nor White Packert obtained Ting's permission to engage in any aspect of the 321 Campaign.  On the day of the shoot, White Packert presented a second release to Ting at the end of the shoot, which she signed ('Adult Release').  The Adult Release is much broader than the first release." (*Id.* at 4-5.) | This statement contains legal conclusions regarding the validity of the Voucher, the scope of the Voucher, and Bose and White Packert's rights vis-à-vis the images. |
| "The language of the Voucher includes no buyout provisions and prohibits Bose from using the photographs in the manner they were used in the 321 Campaign." (*Id.* at 5.) | This statements contains legal conclusions about the validity and scope of the Voucher and Bose's rights vis-à-vis the images. |

     5.   <u>Any Remaining Testimony Is Supported With Insufficient Factual Data or So Intertwined With Legal Opinion Such That It Too Should Be Excluded</u>

Other portions of Mr. Wolfe's testimony are so intertwined with legal testimony that it would be impossible to separate proper from improper testimony.  For example, in Section IV(A)(3), Mr. Wolfe states:

> There is other evidence demonstrating that the photographs were used in a manner other than that contemplated by the Voucher.  I find the compensation spelled out in the Voucher ($1,000.00) for a full day modeling (8:30 a.m. - 5:00 p.m.) to be commensurate with the limited use of the photograph, which is plainly spelled out in the Voucher. Had the modeling agent, booker, or model known that the intended use of the photographs would be greater than that spelled out in the Voucher, it is clear that more substantial and commensurate consideration would have been negotiated.

(Forman Decl., Ex. 1 at 9.)  Mr. Wolfe's legal conclusions about the manner of use allegedly "contemplated by" and "spelled out in" the Voucher poisons Mr. Wolfe's entire testimony on the issue of compensation.

Moreover, Mr. Wolfe's opinion in this section that, "[g]iven the scope of usage of the photographs by Bose, an agent representing the model appearing in the photographs would have been reasonable to try to negotiate a percentage of sales as a form of compensation" is completely unsupported by any factual data.  (*Id.* at 7-8.)  Expert testimony must be based on

sufficient facts, not conjecture or speculation. *See Gen. Elec. Co.*, 522 U.S. at 146-47, 519 (1997) (holding that the district court properly excluded expert testimony and stating that, "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

Here, Mr. Wolfe fails to point to *any* data that supports his opinion about the percentage of sales fee form of compensation. For example, Mr. Wolfe has not testified that he has ever negotiated this form of compensation for a client. Nor has he testified that he has personal knowledge of a situation in which this form of compensation has been requested, much less obtained, and the factual circumstances related thereto. In fact, Mr. Wolfe completely fails to point to *any* objective data that might support his opinion that an unknown model of Plaintiff's caliber would reasonably negotiate a percentage of sales fee in exchange for use of her image in the manner Plaintiff's image was used by Bose.

Mr. Wolfe's general experience in the modeling industry, without specific experience or knowledge relating to this method of compensation, makes his testimony on this issue merely speculative and thus inadmissible. *See Vigil v. Burlington Northern & Santa Fe Ry. Co.*, 2007 WL 4102256 (D.N.M. 2007) (finding, "[w]here alleged expertise with regard to other aspects of a field give a proffered expert no special insight into the issues of the case, such alleged expertise does not qualify the witness as an expert.").

III.   **CONCLUSION**

The Wolfe Report contains improper testimony on legal issues, testimony that is so entwined with legal issues as to make it inseparable, and testimony that is otherwise inadequately supported by factual data, rendering the Wolfe Report inadmissible as expert testimony in its

entirety.  For the foregoing reasons, Bose respectfully requests that the Court preclude Plaintiff

Ting Ji from offering expert evidence from Richard Wolfe at a trial, at a hearing, or on a motion.

Dated:  January 18, 2008

/s/ Michael S. Forman
Gregory A. Madera (BBO 313,020)
Amy L. Brosius (BBO 656,521)
Michael S. Forman (BBO 663,026)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

*Attorneys for Defendant/Third Party Plaintiff*
*Bose Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 18th day of January, 2008.

/s/ Michael S. Forman
Michael S. Forman